## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAWN BALL,                              :        Civil No. 1:10-CV-2561
                                        :
        Plaintiff,                      :        (Chief Judge Kane)
                                        :
        v.                              :
                                        :        (Magistrate Judge Carlson)
LT. BOWER, et al.,                      :
                                        :
        Defendants.                     :

## REPORT AND RECOMMENDATION

I.      **Statement of Facts and of the Case.**

        A.      **Dawn  Ball's Litigation History**

        The plaintiff, Dawn Ball, is a state prisoner and a prodigious federal court

litigant.  Indeed, at present Ball has a total of sixteen lawsuits pending before this

Court.[1]  Ball is also a prodigiously unsuccessful litigant, who has had at least three

prior lawsuits dismissed either for failure to exhaust her administrative remedies, or

as frivolous on the grounds that the lawsuit failed to state a claim upon which relief

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-
Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.);
Ball v. Beard, No. 1:09-CV-846 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846,
(M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-
CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther,
No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball
v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830
(M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-
CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v.
Famiglio, No. 1:11-CV-1834 (M.D.Pa.)

could be granted. See, e.g., Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.); Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.); Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.); Ball v. Butts, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

## B.    Ball's Current Lawsuit

It is against this backdrop that Ball instituted the current lawsuit.  Ball's *pro se* civil rights complaint, which was filed on December 17, 2010, provides a paradigm of the problems which seem to plague this inmate. (Doc. 1)   According to Ball's complaint, these civil rights violations arose out of an extremely brief period of incarceration in the Lycoming County Jail on December 10, 2010. (Id.)  This period of imprisonment was exceedingly brief, as Ball acknowledges: "I was only there for maybe 3 or 4 hours, tops." (Id.)  Yet, in that short span of time Ball managed to: (1) become embroiled in a "belligerent" exchange with an unidentified male correctional officer who was inspecting her personal property; (2) indulge in a "nasty" discussion with an unidentified female correction officer; (3) become sufficiently disruptive that two other correctional staff, Lt. Bower, and Correctional Officer Rogers, were compelled to transfer her to the Special Management Unit at this county jail; (4) engage in an exchange of curses with these transporting officers; (5) become involved in a physical altercation in which Ball alleges that she was struck by the officers; and

(6) find herself placed in a special management unit cell, where she alleged she was confined, naked, for approximately one hour. (Id.)

On December 17, 2010, Ball filed this *pro se* lawsuit, which recited this remarkable turn of events at the county prison and named six defendants: the Lycoming County Jail, the warden, Lt. Bower, Correctional Officer Rogers, and the two unidentified correctional officers as John and Jane Doe defendants. (Id.)  In her complaint, Ball acknowledged that she never endeavored to exhaust her administrative grievance remedies at the county jail before proceeding into federal court, explaining that she was only "at this county for 3 to 4 hours". (Id.)  Ball then demanded wide ranging relief from the defendants in the form of compensatory and punitive damages, along with declaratory relief. (Id.)

The Lycoming County Jail, its warden and the unnamed prison staff cited in Ball's complaint have now filed a motion to dismiss, which alleges, *inter alia*, that Ball has failed to state a claim upon which relief may be granted and that Ball also failed to exhaust her administrative grievances at the jail before proceeding into federal court. (Doc. 11)  This motion has been fully briefed by the parties, (Docs. 12, 15, 19, and 20) and is ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss be granted.

## II.   Discussion

### A.   Rule 12(b)(6)– The Legal Standard

The defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth." Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that this complaint, in its present form, is subject to dismissal with respect to the Lycoming County Prison, its warden and the unnamed correctional staff cited by Ball ten months ago. These flaws in this pleading which compel dismissal of this action as to these defendants are discussed separately below:

## B.  Ball Has Failed to Exhaust Her Administrative Remedies

At the outset, the defendants urge the Court to dismiss the plaintiff's claims because Ball acknowledges that she has made no effort to timely exhaust the administrative remedies available to her at the Lycoming County Prison. Ball, in turn, has countered this defense claim by asserting that she did not avail herself of these

remedies because she was only briefly housed in this jail, and has since been transferred from this facility.

This dispute is important because Ball's alleged failure to timely pursue these administrative remedies can have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1197e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made by Ball grounded in alleged violations of the Eighth Amendment.  See Spruill v. Gillis, 372 F.3d 218 (3d. Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).  While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts.  This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies.  As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process.

Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance

process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).    Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court.  See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2006). This requirement of strict adherence to the timetables prescribed by prison grievance policies is compelled by the important policies underlying the PLRA.  As the Supreme Court has noted:  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

Furthermore, consistent with the "proper exhaustion" approach mandated by the PLRA, it is no excuse for an inmate to assert that she did not exhaust her administrative remedies because she was later transferred from the prison.  Rather, it is well settled that: "The exhaustion requirement of the PLRA applies to grievance procedures 'regardless of the relief offered by the administrative procedures.' Booth, 532 U.S. at 741 (2001); see also Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir.2000) ("[T]he PLRA amended § 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory-whether or not they provide the inmate-plaintiff

with the relief he says he desires in his federal action.").  Moreover, the Third Circuit has found that transfer to another facility does not excuse the PLRA's exhaustion requirement. See Williamson v. Wexford Health Sources, Inc., 131 F. App'x 888, 890 (3d Cir.2005) (affirming grant of summary judgment for failure to exhaust against plaintiff where plaintiff was transferred to a different prison after filing administrative claim, which plaintiff did not appeal)." In re Bayside Prison Litigation, No. 97-5127, 2008 WL 2387324, *4 (D.N.J. May 19, 2008).

Instead, this broad rule admits of one, narrowly defined exception.  If the actions of prison officials directly caused, or contributed to, the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp  v. Brennan, 219 F.3d 279 (3d. Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of  failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra,  49 F. App'x at 368. See also, Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison

officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir.2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, was impeded in filing a timely grievance, or some other extraordinary circumstances intervened and prevented compliance with the grievance process, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005).  Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him; Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002); or by claiming that the inmate was transferred from the prison where the alleged misconduct occurred.  See Williamson v. Wexford Health Sources, Inc., 131 F. App'x 888, 890 (3d Cir.2005) (affirming grant of summary judgment for failure to exhaust against plaintiff where plaintiff was transferred to a different prison after filing administrative claim, which plaintiff did not appeal); In re Bayside Prison Litigation, No. 97-5127,  2008 WL 2387324, *4 (D.N.J. May 19, 2008).  Thus, an inmate's confusion regarding these

grievances procedures does not, standing alone, excuse a failure to exhaust. <u>Casey v. Smith</u>, 71 F. App'x 916 (3d Cir. 2003).

Here it is undisputed that the Lycoming County Jail had administrative grievance procedures in place which Ball could have used to challenge this alleged conduct by prison staff. <u>See</u> <u>Illes v. DeParlos</u>, No. 09-1166, 2011 WL 861712 (M.D. Pa., March 9, 2011)(describing administrative grievance policy at Lycoming County jail). It is also entirely undisputed that Ball never availed herself of these procedures before proceeding into federal court. Further, there is no dispute that Ball's transfer from this facility, standing alone, does not excuse her failure to exhaust these administrative remedies. <u>See</u> <u>Williamson v. Wexford Health Sources, Inc.</u>, 131 F. App'x 888, 890 (3d Cir.2005); <u>In re Bayside Prison Litigation</u>, No. 97-5127, 2008 WL 2387324, *4 (D.N.J. May 19, 2008). Therefore, as a threshold matter, Ball's claims against these defendants fail on administrative exhaustion grounds.

But beyond this threshold concern, there are separate, and independent, substantive flaws with Ball's complaint as it relates to the moving defendants. These deficiencies, which go directly to the merits of Ball's claims against these defendants, are discussed separately below.

### C.   **Ball's Current Complaint Fails to State Any Claims Against The Prison Warden**.

Ball's complaint names the prison warden as a defendant, but is wholly bereft of any factual allegations regarding direct misconduct by this defendant.  This is a fatal flaw in this pleading since it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. Appx. 178, 181 (3d Cir. 2006).

Here, Ball does not allege that the warden directed the conduct of staff, or had knowledge of that conduct and acquiesced in it.  Rather, Ball merely listed the warden in the caption of her complaint, without setting forth any basis for a claim against him in the body of this pleading, a style of pleading which is plainly inadequate to state a claim against a prison supervisor and compels dismissal of this defendant.  Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)

### D.   Ball's Complaint Fails to State a Claim Against an Institutional Defendant Like the Lycoming County Jail

In addition, to the extent that Ball seeks to hold a governmental agency like the Lycoming County Jail liable for alleged civil rights violations, Ball must meet an exacting burden of pleading and proof.  It is well-settled that local governmental entities like a county jail may not be held liable under § 1983 for the acts of their employees under a theory of respondeat superior or vicarious liability.  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1948 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Thus, to sustain a claim like the claim that Ball initially appeared to advance against the jail as an institution, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997).  This custom must be "so widespread as to have the force of law." Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).

The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404).  A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted).  There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" Id. at 325 (citations omitted).  Therefore, analysis of a claim under Monell requires separate analysis of two distinct issues: "(1) whether plaintiff's harm was caused by

a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

An institutional defendant may also be liable for constitutional violations resulting from inadequate training or supervision of its employees if the failure to train amounts to a custom of the municipality. However, failure-to-train claims also must meet precise and demanding legal criteria. Such a failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Proving agency liability on a theory of deliberate indifference is an especially difficult showing for a plaintiff to satisfy where the plaintiff has alleged that insufficient training or supervision has caused constitutional violations. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Such a showing requires that "(1) . . . lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Moreover, the plaintiff proceeding on such a theory must establish that the agency's "deliberate conduct . . . was the 'moving force' behind the injury alleged." Reitz, 125 F.3d at 145 (quoting Brown, 520 U.S. at 404). Therefore, the need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so

apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Horton v. City of Harrisburg, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. July 23, 2009) (quoting Strauss v. Walsh, No. Civ. A. 01-3625, 2002 U.S. Dist. LEXIS 24717, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)).  Additionally, in order to recover for municipal liability on a failure-to-train theory, the alleged failure must be "closely related to the ultimate (constitutional) injury." Woloszyn, 396 F.3d at 325.

The Supreme Court has recently reaffirmed the guiding principles which define institutional civil rights liability based upon a failure to train or oversee law enforcement officers.  In Connick v. Thompson, – U.S.– , 131 S.Ct. 1350, 1359 (2011), the Court described the parameters of agency liability in the following terms:

> A municipality or other local government may be liable . . .if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.  See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978).  But, under § 1983, local governments are responsible only for "their *own* illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479(1986) . . . .  They are not vicariously liable under § 1983 for their employees' actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S., at 691.  Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . .  These are "action[s] for which the municipality is actually responsible." Pembaur, supra, at 479–480.  In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.  See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* ").  To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . . . Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. . . . " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . .  Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

Id.(some citations deleted).

Here, in its present form, Ball's complaint simply does not make any allegations which would permit a finding of institutional liability against the Lycoming County Jail.  Ball does not allege that the jail had a custom or policy of mistreating inmates, nor could she credibly make such a claim since her mere 3 to 4 hours housed in this jail would not be sufficient time to identify any such custom or policy.  Neither has Ball alleged facts that would permit a finding of institutional liability on a failure-to-train theory since she has not alleged well-pleaded facts which would permit an inference that the agency's failure to train "amount[ed] to deliberate indifference to the constitutional rights of persons with whom the [jail] c[a]me in contact." Colburn,

946 F.2d at 1028 (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989)). Therefore, Ball's claims against this institutional defendant, like her claims against the warden, fail as a matter of law.

**E.     The John and Jane Doe Defendants Should Also Be Dismissed**

Finally, there is one other deficiency in this complaint, in its current form, which warrants brief comment.  We note that, at this time, some ten months after instituting this lawsuit, Ball still lists two defendants under fictitious names.  Ball has had ample opportunity to endeavor to identify these defendants, but has not yet done so despite the passage of ten months.  In this case, where ten months have now elapsed without Ball actually identifying the persons she wishes to sue, the proper exercise of this Court's broad discretion in these matters would call for the dismissal of these , currently fictitious, parties. <u>See</u> <u>Blakeslee  v. Clinton County</u>, 336 F. App'x 248 (3d Cir. 2009)(affirming dismissal of fictitious defendants after ten months of litigation). Therefore, we recommend dismissal of these fictitious defendants at this juncture.

In making these recommendations we recognize that *pro se* plaintiffs in civil rights cases often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote  Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).  At present, however, Ball's claims against these defendants clearly fail to state

a claim upon which relief can be granted.  Therefore, it is recommended that these defendants be dismissed without permitting further leave to amend.

### III.  Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss (Doc. 11), be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of October, 2011.

*S/MARTIN C. CARLSON*
Martin C. Carlson
United States Magistrate Judge