IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN MARIE BALL<br>　　Plaintiff | :<br>:<br>: |
| vs. | : CIVIL ACTION NO. 1:10-CV-2561<br>: |
| LT. BOWER,<br>C.O. ROGERS,<br>WARDEN,<br>LYCOMING COUNTY JAIL,<br>JANE DOE and JOHN DOE<br>　　Defendants | : CHIEF JUDGE KANE<br>:<br>: MAGISTRATE JUDGE CARLSON<br>:<br>:<br>: FILED ELECTRONICALLY |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1. Plaintiff had been a convicted state inmate house at SCI-Muncy but, as a result of an incident occurring at SCI-Muncy, was charged on December 2, 2009 in the Court of Common Pleas of Lycoming County to No. CR-979-2010 with Aggravated Harassment by Prisoner, Simple Assault and Harassment –Subject Other to Physical Contact ("Criminal Charges"). (Affidavit of Trisha Hoover "Hoover Affidavit" and Affidavit of Kevin A. DeParlos "DeParlos Affidavit")

2. As a result of her alleged criminal actions at SCI-Muncy, Plaintiff was housed at SCI-Cambridge Springs. (Hoover Affidavit)

3. The Court of Common Pleas of Lycoming County scheduled a Pre-Trial Hearing on the Criminal Charges for December 14, 2010. (Hoover Affidavit)

4. In her capacity as Assistant Public Defender, Attorney Tricia Hoover represented Plaintiff in the Criminal Charges. (Hoover Affidavit)

5. In anticipation of the Pre-Trial Hearing, Plaintiff was transported from SCI-Cambridge Springs to the Lycoming County Prison ("Prison") on December 10, 2010. (Hoover Affidavit and DeParlos Affidavit)

6. Plaintiff was incarcerated in the Prison for approximately 3 ½ hours on December 10, 2010 from noon until 3:26 p.m. (DeParlos Affidavit)

7. Plaintiff was uncooperative, disruptive and combative from the outset of her commitment to the Prison as she was protesting being housed in the Prison. (DeParlos Affidavit)

8. As a result of Plaintiff's disruptive behavior upon Commitment to the Prison, Deputy Warden Kevin A. DeParlos and Deputy Warden Brad Shoemaker monitored Plaintiff's actions via reports from the Supervisors and video feed. (DeParlos Affidavit)

9. Plaintiff began acting out initially in the Prison Intake Department by swearing at and threatening the Intake Officer. (DeParlos Affidavit)

10. As a result of Plaintiff's disruptive behavior, the Intake Officer called Sergeant Bower to the Intake Department. (DeParlos Affidavit)

11. Sergeant Bower, together with Corrections Officers Rogers (male) and Wheeland (female) handcuffed and escorted Plaintiff to the Female Special Management Unit ("SMU"). (DeParlos Affidavit)

12. As a result of Plaintiff's disruptive behavior, Deputy Warden Shoemaker notified the Court of Common Pleas of Lycoming County of Plaintiff's actions in an attempt to have her transferred to SCI-Muncy which is approximately 15 miles east of the Prison. ((DeParlos Affidavit)

13. The SMU is equipped with a video camera which feed can be viewed on monitors in the Sub Control and in the Central Control of the Prison. (DeParlos Affidavit)

14. Video Camera feed demonstrates Plaintiff's behavior from the hallway approaching the SMU cell ("Hallway"), the SMU Vestibule ("Vestibule")

immediately outside the SMU cell and inside the SMU cell. (DeParlos Affidavit and Exhibit A thereto ("Video Tape"))

15. As Plaintiff was being escorted through the Hallway, Plaintiff did not appear to be in any distress as if she had just been assaulted by Sergeant Bower or Corrections Officer Rogers ("Motioning Defendants") as she has alleges in her Complaint. ( DeParlos Affidavit and Video Tape)

16. As Plaintiff was being escorted through the Hallway, Plaintiff was wearing her eye glasses which do not appear to be broken or bent. (Video Tape)

17. As Plaintiff was being escorted through the Hallway to the SMU cell, Plaintiff has no visible marks on her face as if she had just been slapped or punched in the face. (Video Tape)

18. As Plaintiff was being escorted through the Hallway to the SMU cell, Plaintiff did not exhibit any signs of distress as she would have been had she been hit in the face as she alleges. (Deparlos Affidavit and Video Tape)

19. Once Plaintiff reached the SMU cell, she was put inside cell, the door was closed and her handcuffs were removed through the security wicket in the cell door. (VideoTape)

20. After Plaintiff's Handcuffs were removed, but before the security wicket was closed, Plaintiff spit on Sergeant Bower. (DeParlos Affidavit and Video Tape, slow motion review)

21. Sergeant Bower did not respond in any manner to Plaintiff and he closed the security wicket without further incident. (DeParlos Affidavit and Video Tape)

22. Almost immediately upon entering the SMU cell, Plaintiff removed her bra, panties and socks and flushed them down the toilet. (DeParlos Affidavit and Video Tape)

23. Next Plaintiff attempted to tear her Prison-issued pants. (DeParlos Affidavit and Video Tape)

24. As a result of Plaintiff's attempt to tear her Prison-issued pants, Officers Rogers and Wheeland and Sergeant Bower ordered Plaintiff through the security wicket to hand her pants through the security wicket. (DeParlos Affidavit and Video Tape)

25. Plaintiff complied with the order, but was continuously swearing and threatening the Officers and Sergeant Bower and additionally threatened to hurt herself during said interaction. ((DeParlos Affidavit, Video Tape and Exhibits C, D and E)

26. As a result of Plaintiff's continued combative and disruptive behavior and her threats to harm staff and herself, Plaintiff was removed from her cell into the Vestibule and Officer Wheeland removed her mattress from the SMU cell. (Deparlos Affidavit and Video Tape)

27. Plaintiff was then returned to the SMU cell and ordered to hand over her shirt which she did. (DeParlos Affidavit and Video Tape)

28. Almost immediately after the door was closed after being returned to the SMU cell, Plaintiff defecated close to the cell door and threw feces under the door and into the Vestibule. (DeParlos Affidavit and Video Tape)

29. Also, Plaintiff smeared feces on the video camera and cell door window. (DeParlos Affidavit and Video Tape)

30. Officer Wheeland cleaned up the feces in the SMU Vestibule and placed a Flooding Protective Device at the base of Plaintiff's cell door in the event Plaintiff flooded her cell by stopping up the toilet, which is a common practice with

disruptive inmates. (DeParlos Affidavit and Video Tape) (DeParlos Affidavit and Video Tape)

31. Plaintiff pulled the Flooding Protective Device under her cell door and tore off a piece of the Device. (DeParlos Affidavit and Video Tape)

32. A short time later, Attorney Hoover came to the Prison to meet with Plaintiff in order to discuss the Pre-Trial Hearing and the potential for a plea agreement. (Hoover Affidavit and DeParlos Affidavit)

33. Because of Plaintiff's acting out, she was not able to come to the Attorneys' Visitation Rooms at the Prison. (Hoover Affidavit)

34. The Correctional Staff at the Prison asked Attorney Hoover if she wanted to see Plaintiff in her SMU cell, which she agreed to do. (Hoover Affidavit)

35. Attorney Hoover was escorted to the Female SMU Vestibule and attempted to talk to Plaintiff through the security wicket. (Hoover Affidavit, DeParlos Affidavit and Video Tape)

36. At all times prior to, during and for a short period after Attorney Hoover's visit, Plaintiff was wearing her eye glasses in her cell which did not appear to be bent or broken in any manner.

37. During the time Attorney Hoover was present in the Vestibule attempting to talk to Plaintiff, Plaintiff was cursing, yelling, screaming and crying. (Hoover Affidavit, DeParlos Affidavit and Video Tape)

38. Plaintiff had told Attorney Hoover she had been punched in the face. (Hoover Affidavit)

39. Although she had a limited view and was standing several feet away, Attorney Hoover could see Plaintiff through the security wicket. (Hoover Affidavit and Video Tape)

40. Attorney Hoover did not see any marks on Plaintiff's face and Plaintiff was wearing her eye glasses which did not appear to be broken or bent. (Hoover Affidavit and Video Tape)

41. During the time Attorney Hoover attempted to talk to Plaintiff through the security wicket, Plaintiff was not rational and would not stop screaming or yelling. (Hoover Affidavit and Video Tape)

42. As a result of Plaintiff's behavior Attorney Hoover observed, Attorney Hoover left the Prison and immediately filed a Petition for Psychiatric Examination to Determine Competency to Proceed and Legal Sanity with the Court of Common Pleas of Lycoming County questioning Plaintiff's competency to stand trial. (Hoover Affidavit and Exhibit B thereto)

43. On the same day, the Lycoming County Court granted the Petition for Psychiatric Examination to Determine Competency to Proceed and Legal Sanity in order to determine Plaintiff's competency to stand trial on the Criminal Charges. (Hoover Affidavit and Exhibit C)

44. Approximately eighteen minutes after Attorney Hoover left the Prison, Officers Rogers, Stutzman and Wheeland, together with Sergeant Bower, went into Plaintiff's SMU cell, handcuffed her, removed her to the Vestibule, and the Officers cleaned the feces from the video camera and cell door window. (DeParlos Affidavit and Video Camera)

45. In addition, the aforementioned searched Plaintiff's cell to ensure there was nothing she could use to harm herself. (DeParlos Affidavit and Video Camera)

46. While the Officers were cleaning Plaintiff's SMU cell, Plaintiff was standing against the wall in the Vestibule. (DeParlos Affidavit and Video Camera)

47. The female SMU Vestibule is isolated and other inmates cannot see into the Vestibule. (DeParlos Affidavit and Video Camera)

48. At all times when Plaintiff was outside of her cell, Sergeant Bower held a taser ready for use, but did not discharge the taser against Plaintiff at any time. (DeParlos Affidavit and Video Tape)

49. After her the SMU cell was cleaned, Plaintiff was placed back into the cell and her handcuffs were removed through the security wicket. (DeParlos Affidavit and Video Tape)

50. During said interaction, Plaintiff was continuously cursing at and making threats to the Officers, as well as making threats to harm herself. (DeParlos Affidavit and Video Tape via body language as there was no audio))

51. Within a short period of time from being returned to her cell after it had been cleaned, Plaintiff once again defecated inside the cell door and again threw feces onto the video camera and smeared it on the cell door window. (DeParlos Affidavit and Video Tape)

52. At the request of Deputy Warden Shoemaker, Officers Rogers and Wheeland, together with Sergeant Bower, re-entered the Vestibule and asked Plaintiff, through the security wicket, to hand out her eyeglasses so that she could not use them to hurt herself. (Deparlos Affidavit and Video Tape)

53. Plaintiff complied and handed her eye glasses out through the security wicket, but remained combative and threatening during the interaction. (DeParlos Affidavit and Video Tape)

54. Approximately 10 minutes after retrieving her eye glasses, Officer looked through the security wicket and found Plaintiff standing on the sink with a piece of

material tied around her neck which was tied to the air vent in her cell. (DeParlos Affidavit and Video Tape)

55. After calling for backup on her radio, Officer Wheeland talked to Plaintiff through the security wicket and convinced her to untie the material from around her neck. (DeParlos Affidavit, Exhibit D thereto and Video Tape)

56. Plaintiff was then removed from the cell into the Vestibule, the material cut down, the video camera again cleaned and Plaintiff was returned to her cell. (DeParlos Affidavit and Video Tape)

57. As a result of her combative behavior which was communicated by Deputy Warden Shoemaker, Lycoming County Common Pleas Judge Marc F. Lovecchio executed an Order on December 10, 2010 at around 3:12 p.m. ordering Plaintiff to be moved from the Prison to SCI-Muncy. (DeParlos Affidavit and Exhibit B thereto)

58. Upon receipt of the Court Order, Plaintiff was given a prison-issued jumpsuit, taken to the Intake Department of the Prison, given a spit protector to wear and turned over to the Lycoming County Sheriff's Department for transfer to SCI-Muncy. (DeParlos Affidavit and Video Tape)

59. In light of Plaintiff's extreme difficult and combative behavior, the Correctional Officers supervising Plaintiff at the Prison as well as Sergeant Bower acted professionally and controlled. (DeParlos Affidavit and Video Tape)

60. Although Sergeant Bower had a taser available for use at all times when Plaintiff was out of her cell, he did not discharge the taser. (DeParlos Affidavit and Video Tape)

61. The act of handcuffing inmates when they are removed from the SMU cell is a security measure used on all SMU inmates. (Deparlos Affidavit)

62. Plaintiff's actions necessitated handcuffing and uncuffing her several times while she was in the SMU cell. (DeParlos Affidavit and Video Tape)

63. The Officers and Sergeant Bower appropriately handled the removal of Plaintiff's handcuffs through the security wicket in the SMU cell. (DeParlos Affidavit and Video Tape)

64. It is possible that Plaintiff scrapped her forearm during the handcuffing or uncuffing process, however, none of the Officers nor Sergeant Bower pulled Plaintiff's through the security wicket in a violent or inappropriate manner. (DeParlos Affidavit and Video Tape)

65. It does not appear from the Video Tape that Plaintiff had any marks on her face which she would have if she had been punched or slapped in the face as she alleges. (DeParlos Affidavit and Video Tape)

66. It does not appear from the Video Tape that Plaintiff's eye glasses were broken or bent or that they were askewed on her face as they would have been had she been punched or slapped in the face as she alleges. (DeParlos Affidavit and Video Tape)

67. Plaintiff retained her eye glasses in SMU until after she began threatening to harm herself, at which time they were removed for her safety. (DeParlos Affidavit and Video Tape)

McNERNEY, PAGE, VANDERLIN & HALL

By: /s/ Robin A. Read
Robin A. Read, I.D. #47629
Attorney for Motioning Defendants Bower and Rogers
433 Market Street
P.O. Box 7
Williamsport, Pennsylvania 17703
Telephone: 570-326-6555
Facsimile: 570-326-3170
Email: rread@mpvhlaw.com

Date: December 3, 2012


# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN MARIE BALL<br>   Plaintiff | : |
| vs. | : CIVIL ACTION NO. 1:10-CV-2561 |
| LT. BOWER,<br>C.O. ROGERS,<br>WARDEN,<br>LYCOMING COUNTY JAIL,<br>JANE DOE and JOHN DOE<br>   Defendants | : CHIEF JUDGE KANE<br>:<br>: MAGISTRATE JUDGE CARLSON<br>:<br>: FILED ELECTRONICALLY |

## CERTIFICATE OF SERVICE

**AND NOW**, this __3rd__ day of December, 2012, I hereby certify that I have served the foregoing Statement of Material Facts Not in Dispute as described below.

**By United States Mail, First Class, postage pre-paid, Certificate of Mailing:**

Dawn Marie Ball
OL 0342
SCI Muncy
Box 180
Muncy, PA 17756

                         McNERNEY, PAGE, VANDERLIN & HALL

                         By: /s/ Robin A. Read
                         Robin A. Read, Esquire
                         I.D. #47629
                         Attorney for Motioning Defendants
                         Lieutenant Bower and C.O. Rogers
                         433 Market Street
                         P.O. Box 7
                         Williamsport, Pennsylvania 17703
                         Telephone: 570-326-6555
                         Facsimile: 570-326-3170
                         Email: rread@mpvhlaw.com